J-S18010-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMY SUDDUTH SPARKMAN | : | |
| | : | |
| Appellant | : | No. 1360 MDA 2025 |

Appeal from the Judgment of Sentence Entered September 16, 2025
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000666-2024

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.: **FILED: AUGUST 14, 2026**

Appellant, Jeremy Sudduth Sparkman, appeals from the September 16, 2025 judgment of sentence entered by the Cumberland County Court of Common Pleas challenging the sufficiency of the evidence supporting the restitution portion of his sentence relating to a forged check. After careful consideration, we affirm.

The relevant factual and procedural history is as follows. In January 2025, Appellant pled guilty to one count of Forgery-Altered Writing.[1] During his plea hearing, Appellant agreed that between June 13, 2023, and November 29, 2023, he "forge[d] up to five checks from his employer Dairy Queen, located in East Pennsboro Township, Cumberland County, causing a total loss

---

[1] 18 Pa.C.S. §§ 4101(a)(1). The trial court mistakenly noted that Appellant also pled to Theft by Deception. Trial Ct. Op., 12/19/25, at 1. This misstatement does not impact the trial court's analysis of the issue on appeal.

to Members 1st [Federal Credit Union ("Members 1st")] of $3,502.90, and also a loss to his employer totaling $15,612.55[,]" such that he could be subject to "restitution in the amount of just over $19,000[.]"  N.T. Guilty Plea Hr'g, 1/24/25, at 3-4.  The signed guilty plea states that "there is restitution due, but needs to be verified."  Plea of Defendant, 1/24/25.

On June 24, 2025, the court sentenced Appellant to 9 to 23 months of imprisonment and to pay restitution to Members 1st of $3,502.90 and to Dairy Queen of $16,612.55.  On July 3, 2025, Appellant filed a post-sentence motion challenging the restitution amount.

During a September 16, 2025 hearing to address restitution, the parties agreed that the court should deduct portions of the previously ordered restitution but disagreed, *inter alia*, regarding check number 1012 ("Check 1012") for $5,628.39.  Below are the relevant facts as found by the court following the testimony of Basave Sankaraiah of Dairy Queen and Amanda Lubold of Orrstown Bank:

> [Appellant] was the general manager at a local Dairy Queen.  The owner wrote out check number 1012 to Daniel Gra[nizo] in the amount of $628.39 for a freezer repair.  He gave it to [Appellant] to pay the invoice.  The check was altered to provide for an amount payable of $5,628.39.  The check was negotiated at Key Bank and paid by the drawee, Orrstown Bank.  Mr. Gra[nizo]never received any of the money.  Orrstown Bank reimbursed Dairy Queen for the entire amount of the forged check.

Trial Ct. Op., 12/19/25, at 2 (footnotes omitted).  The check entered into evidence was drafted as payable to "Daniel Granizo or Samir Stevenson," and Ms. Lubold testified that the signature on the back of the check appeared to

be "Samir." Commonwealth's Ex. 4; N.T. Restitution Hr'g, 9/16/2025, at 19-20. Notably, the Commonwealth did not present any direct evidence that Appellant deposited the check or any testimony from the Key Bank.

At the conclusion of the restitution hearing on September 16, 2025, the court modified Appellant's sentence in part, ordering restitution in the following amounts: $3,502.90 to Members 1st; $2,485.42 to SSS Foods, Inc., DBA: Dairy Queen; and $5,628.39 to Orrstown Bank. Order, 9/16/25. Thus, the restitution totaled $11,616.71.

On October 2, 2025, Appellant appealed his amended judgment of sentence. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

Whether the imposition of restitution to Orrstown Bank pursuant to 18 Pa.C.S. § 1106 on [Appellant] is based on insufficient evidence as there was no direct nexus established at the restitution hearing between [Appellant's] [c]onduct and the amount of money Orrstown Bank lost.

Appellant's Br. at 7.

By challenging the sufficiency of the evidence supporting the nexus between the loss suffered and his criminal conduct, Appellant presents a challenge to the legality of his sentence.[2] Appellant's Br. at 12-23; **see**

---

[2] We distinguish this Court's recent decision in **Commonwealth v. Rapp**, 331 A.3d 17, 25 (Pa. Super. 2025), which involved a challenge to the discretionary aspects of the restitution. In **Rapp**, we emphasized that the appellant did "not develop an argument that his conduct [was] unconnected to the loss, only that the loss that flowed from his proven conduct was not sufficiently established." **Id.** Thus, the issue in **Rapp** did not implicate the legality of the restitution as there was "no disconnect between crime and restitution[.]" **Rapp**, 331 A.3d at 25.

- 3 -

*Commonwealth v. Stoops*, 290 A.3d 721, 723 (Pa. Super. 2023). "When reviewing the legality of a sentence, we apply a plenary scope and *de novo* standard of review." ***Id.***

The Crimes Code provides for mandatory restitution in relevant part as follows:

> Upon conviction for any crime wherein . . . property of a victim has been stolen, converted or otherwise unlawfully obtained . . . as **a direct result of the crime**; . . . the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor."

18 Pa.C.S. § 1106(a) (emphasis added); ***see Commonwealth v. Weir***, 239 A.3d 25, 33 (Pa. 2020) (recognizing mandatory nature of restitution under Section 1106). "This Court has interpreted the phrase 'as a direct result of the crime' to require 'a loss that flows from the conduct which forms the basis of the crime[.]'" ***Stoops***, 290 A.3d at 723 (citation omitted). In other words, "[t]here must exist a direct causal connection between the crime and the loss." ***Id.*** at 724 (citation and internal quotation marks omitted).

Appellant contends that the Commonwealth failed to present sufficient evidence that Orrstown Bank's loss from Check 1012 flowed from Appellant's criminal behavior. Appellant's Br. at 12-23. He observes that Check 1012 appeared to be signed by "Samir" and deposited in Key Bank, but that the Commonwealth did not present any testimony regarding the account in which it was deposited. Appellant's Br. at 13-14. Appellant emphasizes that he did not plead to specific checks during his plea hearing. ***Id.*** at 20. Thus, Appellant asks this Court to vacate the portion of the restitution relating to Check 1012.

We disagree. Following our review, we conclude that the record supports the trial court's finding of a sufficiently direct nexus between Check 1012 and Appellant's criminal activity. Trial Ct. Op. at 4. While acknowledging that evidence that Appellant altered or negotiated the check at Key Bank "may have been helpful," the court found that such evidence "was not necessary for [it] to conclude that the loss of the $5,628.39 flowed from the crimes to which [Appellant] pled guilty." *Id.* at 4. The court highlighted testimony that: (1) Appellant received the check to pay the refrigerator repair vendor, (2) "[t]he check was altered and negotiated but never delivered to the vendor[;]" and (3) Appellant, in pleading guilty, acknowledged receipt of $19,000 "as a result of his criminal actions." *Id.* The court found that it was "free to draw reasonable conclusions from the proven facts[,]" even when the evidence linking Appellant was circumstantial. *Id.*

As we agree with the court's analysis, we reject Appellant's challenge to the restitution award and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/14/2026

- 5 -